# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           NO. 9-CR-3458 WJ

REEHAHLIO CARROLL,

    Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

    THIS MATTER comes before the Court on Defendant's Motion to Exclude Expert Testimony **(doc. 129)** filed April 10, 2012.  On July 29, 2011, the Government filed its Notice of Intention to Offer Expert Testimony, in which it notified the Court and counsel that it intended to call Agent Warren Pershall as an expert in Bloodstain Pattern Analysis ("BPA").  (Doc. 95.)  Defendant filed a Motion for *Daubert* hearing.  (Doc. 103.)  On March 27, 2012, the Court held a *Daubert* hearing on the matter.  Subsequent to the hearing, Defendant filed his Motion to Exclude Expert Testimony.  (Doc. 129.)  The United States then filed a supplemental notice and report, including an addition to Agent Pershall's previous expert report containing certain conclusions from Agent Pershall's BPA.  (Doc. 134.)  Defendant filed an objection to this supplement.  (Doc. 135.)

    After consideration of the arguments made by the parties during the hearing, and the extremely extensive briefing on the issue, the Court finds that Agent Pershall's testimony is admissible under *Daubert*, but that the supplemental opinions filed after the *Daubert* hearing are untimely and thus, they will be excluded.

## DISCUSSION

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the United States Supreme Court explained that Rule 702 assigns to the district judge a gate-keeping role to ensure that scientific testimony is both reliable and relevant. *See also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline). With regard to reliability, the Court's gate-keeping function involves a two-step analysis. First, the Court must determine whether the expert is qualified by "knowledge, skill, experience, training or education" to render an opinion. *See* Fed.R.Evid. 702. The second step of the Court's reliability analysis, taken once the witness is found to be qualified, is to determine whether the expert's opinions themselves are "reliable" under the principles set forth under *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001). To assist in the assessment of reliability, the Supreme Court in *Daubert* listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. 509 U.S. at 593–94. As noted, the list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Kumho Tire*, 526 U.S. at 150.

Under *Kumho Tire*, a reliability finding is a prerequisite for all expert testimony in areas beyond the knowledge and experience of lay jurors, not just technical or scientific evidence. In *Kumho Tire*, the United States Supreme Court emphasized that the *Daubert* factors are not a

"definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Id*. Also, according to the *Kumho Tire* decision, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 152. Therefore, the list of factors the Supreme Court outlined in *Daubert* "may not perfectly fit every type of expert testimony, particularly technical testimony based primarily on the training and experience of the expert." *United States v. Monteiro*, 407 F.Supp.2d 351, 357 (D. Mass. 2006) (compiling cases). In *Smith v. Ingersoll-Rand Co.*, the Tenth Circuit set forth the reliability inquiry this way:

> The purpose of the *Daubert* gatekeeping function is not to measure every expert by an inflexible set of criteria but to undertake whatever inquiry is necessary to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

214 F.3d 1235, 1243 (10th Cir. 2000) (quoting *Kumho Tire*, 526 U.S. at 152).

I.   **Pershall's Experience**

Agent Pershall has 900 hours of forensic training, 160 of which was on bloodstain pattern analysis and 40 on crime scene reconstruction. He is a member of the International Society for Bloodstain Pattern Analysts. He has taught on the subject of BPA at various state and federal law enforcement agencies. He has done 207 investigations, 46 of which involved a BPA. He has been admitted once before in state court as an expert in BPA. While he has only been in law enforcement for seven years, but he appears to have gone almost immediately into forensics, and spent the majority of his time there. Other experts with less experience in BPA have been admitted as experts some other cases. The Court considers Agent Pershall's experience and education to be sufficient to qualify him to testify as an expert in BPA.

**II.     Reliability**

Defendant Challenges the reliability of the technique of BPA under *Daubert*. While Bloodstain Pattern Analysis does not have the sort of scientific precision that could be given a specific error rate or tested in the individual case, because it is a set of general principles applied to specific circumstances where, by the nature of forensic work, a past event is being reconstructed with no way to verify the accuracy of the reconstruction in the particular case, BPA's scientific validity is essentially similar to most other forensic sciences. At the *Daubert* hearing on this matter, the Government provided evidence that BPA is generally accepted in the relevant scientific community; that there are publications that talk about BPA, and organizations that advance the study and practice of BPA. Additionally, expert testimony regarding BPA has been admitted in a host of state court cases, as well as in federal cases, including in this and other circuits. *See, e.g.*, *Fox v. Ward*, 200 F.3d 1286, 1297 (10th Cir. 2000) (holding not erroneous admission of BPA expert testimony); *U.S. v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991). Therefore, the Court finds that after considering the Daubert factors, BPA is sufficiently reliable under Daubert to form the foundation for admissible expert testimony.

**III.    Relevance**

The Government is required to prove that Defendant committed violent acts, and therefore evidence regarding a BPA analysis of the crime scene is certainly relevant, and its probative value far outweighs any prejudicial effect it might have.

**IV.    Late disclosure of Pershall's conclusions**

The Government disclosed Agent Pershall's report to Defendant on July 29, 2011. Thereafter on April 20, 2012, a full nine months later and after the *Daubert* hearing regarding

Agent Pershall's testimony,[1] the Government seeks to supplement Agent Pershall's report with what could be seen as the primary material of the BPA analysis.  The Government provides the Court with no valid reason justifying such delay.  Additionally, the supplemental material was not furnished enough in advance to allow Defense counsel adequate time to contest its admissibility under *Daubert*.  Therefore the Court will deny admission of the supplemental material.

## CONCLUSION

Therefore, the Court DENIES Defendant's motion to the extent that all of the properly disclosed portions of Agent Pershall's report are admissible under *Daubert*, and the Court GRANTS Defendant's motion as to the lately disclosed conclusions included in the Government's supplemental notice (doc. 134).

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that the essential substance of this supplement was discussed during the Daubert hearing, and that the Government stated that it intended to so supplement Agent Pershall's report.