**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

UNITED STATES OF AMERICA,

      Plaintiff,

   vs.                                                    CRIMINAL NO. 09-3458-WJ

REEHAHLIO CARROLL,

      Defendant.


**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO RECUSE,**
**DENYING REQUEST FOR EVIDENTIARY HEARING,**
**AND**
**OFFERING GUIDANCE ON APPROPRIATE USE OF *EX PARTE* REQUESTS**

THIS MATTER comes before the Court upon Defendant's Motion to Recuse William P. Johnson, filed August 6, 2012 (**Doc. 190**).  Having reviewed the parties' briefs and applicable law, I find that Defendant's motion is not well-taken and shall be denied.

**BACKGROUND**

This motion questions the Court's impartiality to preside over the instant case as a result of *ex parte* communications between the Court and the United States Government. Jury selection and trial was initially set for June 4, 2012.  On May 18, 2012, less than three weeks before trial, the Government filed an *ex parte* request for the Court to determine whether certain information pertaining to a Government witness was material and therefore subject to disclosure to Defendant under *U.S. v. Giglio*, 405 U.S. 150 (1972). *See* Doc. 144.  The information concerned allegations of domestic violence and marital infidelity made against a tribal investigator.  On May 24, 2012, the Government filed a second, supplemental *ex parte* motion to clarify some of

the information presented to the Court in the initial request. Doc. 154.  On June 2, 2012, the

Court denied the Government's request for what the Court described as an "*ex parte* advisory

opinion. . . ."  Doc. 168 at 2.[1]

On the eve of trial (Sunday, June 3, 2012), AUSA Paul Spiers, Esq., called defense

counsel Robert Gorence, Esq., and informed him that "in an abundance of caution," the

Government was disclosing the potential *Giglio*  information pertaining to the investigator.[2]  In

the context of disclosing that information, the *ex parte* communications between the Government

and the Court were revealed.  Mr. Gorence received copies of the two *ex parte* motions filed by

the Government and the Court's sealed Order on the motion on June 4, 2012, about a half-hour

before trial was to commence.

Defendant requested a continuance of the trial, and the Court took up the matter at the

time jury selection and trial was supposed to start.  During the hearing, the Government alluded

to the existence of an internal "policy" which supported the practice of engaging with the Court

in *ex parte* communication, and not surprisingly, defense counsel insisted on being provided with

some kind of documentation to support this statement.  *See* Doc. 173 at 2 (Clerk's Minutes).

Trial was continued so that defense counsel could file the instant motion and to provide defense

counsel additional preparation time in view of the government's eleventh-hour disclosure of the

potential *Giglio* information. The Court also ordered the Government to file a Statement of

Authorities in support of its position regarding *ex parte* communications with the Court.

## DISCUSSION

[1]  The Court's Order on the Government's *ex parte* request was originally filed under seal, but has since been unsealed.
[2]  Normally, the Court makes every effort to act on these types of motions as soon as they come in. However, the Court's attention was necessarily diverted to other cases at the time.  Further, the undersigned was in Spain for a vacation that had been planned for quite some time and did not return until the Friday before the Monday, June 4 trial date.   Consequently, the Court was unable to issue its ruling until the Saturday before trial.

In this motion, Defendant argues that the Government's *ex parte* communications with the Court violated his Fifth Amendment right to due process and require recusal of the undersigned from presiding over this case.

Under 28 U.S.C. § 455(a), a judge must disqualify himself whenever his impartiality might reasonably be questioned.  Section (b) of §455 incorporated the "bias and prejudice" basis for recusal from an older version of the Judicial Code, 28 U.S.C. § 144, and "spelled out in detail the 'interest' and 'relationship' grounds of recusal that had previously been covered by [the old version of] § 455." *Liteky v. United States*, 510 U.S. 540, 548 (1994).  Section 455(a) is general in nature and does not rest on the personal bias and prejudice structure of 28 U.S.C. § 144.[3]

The inquiry under § 455(a) is whether "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (quoting *United States v. Burger*, 964 F.3d 1065, 1070 (10th Cir. 1992) (further quotations omitted)).  Recusal is required whenever "impartiality might reasonably be questioned." *U.S. v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006).  If the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal.  *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995).

The relevant questions here are whether the Government's *ex parte* submission violated Defendant's due process rights, and whether the facts in this case warrant recusal.

## I.    Appropriateness of Government's *Ex Parte* Submissions

The Government contends that the *ex parte* request in this case was proper treatment of *Giglio* material.  *Ex parte* communications are used sparingly because of the risk of

---

[3]   Defendant moves for recusal under §455(a) only.

compromising a court's impartiality.  *Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1095 (10th Cir. 2010) (citing *J.B. v. Washington Co.*, 127 F.3d 919, 925-26 (10th Cir. 1997)).

Defendant contends that the cases cited by the Government in its response brief and Amended Statement of Authorities (Doc. 189) are inapposite because by and large they address requests that are made *in camera,* and not *ex parte*.  In attempting to deflect this argument, the Government claims that the two concepts are related because of the fact that one party is kept in the dark about sensitive information. The Court is not so convinced of their similarity. In an *in camera* request, the movant provides information sufficient to inform the non-movant of the general nature of the request without actually disclosing the information to the non-movant—and therein lies the critical difference. Under the scenario of an *in camera* submission to the Court, opposing counsel at least has notice that something is being submitted to the Court for review and opposing counsel usually has a general idea of what is being presented to the Court by counsel for the moving party. Thus, the Court agrees with the Defendant that the majority of the cases cited by the Government do not support the Government's position that its *ex parte* request was proper.

The Government does, however, offer a few cases on which Defendant is silent, which support the Government's position that *ex parte* requests are proper treatment of *Giglio* material. *See, e.g., U.S. v. Hamaker,*  455 F.3d 1316, 1327 (11th Cir. 2006) (finding no error in district court's ruling that the government did not have to make prior disclosure of witness' status as confidential informant, based on government's *ex parte* motion to court); *U.S. v. Ramos-Cruz*, 667 F.3d 487, 492 (4th Cir. 2012) (granting government's *ex parte* motion to allow witnesses who were police officers to testify using pseudonyms following *ex parte* hearing); *U.S. v. Blackman*, 407 Fed.Appx. 591, 592, 2011 WL 213483, 1 (3rd Cir. 2011) (ruling that material

submitted *ex parte* for the court's *in camera* review did not constitute proper impeachment material and therefore need not be disclosed to defendant); *U.S. v. Preldakaj*,  456 Fed. Appx. 56, 59, 2012 WL 205962 (2d Cir. 2012) (rejecting defendant's argument that court's *in camera* review of potential *Giglio* evidence violated his due process rights, and that the procedure adopted by the district court protected defendant's interests and maintained the government's legitimate right to protect the confidentiality of its agents' records);  *U.S. v. Wright,*  2001 WL 1456856, 1 (D.Kan. 2001) (finding government made sufficient showing in its *in camera* and *ex parte* submission for not immediately disclosing discovery materials).[4] These cases demonstrate the courts' implicit approval of the *ex parte* method of submission for review of potential *Giglio* material. The Government also references sections of the United States Attorney's Manual which approve of *ex parte*, *in camera* review and decision by the Court regarding whether potential impeachment information must be disclosed to counsel, following consultation with supervisory-level officials before such requests are made.  *See* Doc. 189 at 6 (citing ¶¶ 7 & 13 of Section 9-5.100 of the United States Attorney's Manual).

In this case, there was nothing unusual in the nature of the Government's request that could not have been presented to the Court in the form of a sealed motion in limine seeking *in camera* review of the pertinent material.  In the Court's Order rejecting the Government's request, the Court made clear that the matter did not fall into any of the situations where courts have found *ex parte* requests proper: for example, where there is reason to believe that a witness

---

[4]  The court's decision in *Wright* relied on Fed.R.Crim.P.16(d) in finding that there the *ex parte* submission was proper.  Rule 16(d)(1) states that:

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

would be subject to physical or economic harm if his identity is released, *see Will v. United States*, 389 U.S. 90 (1967), or situations where classified information can be deleted pursuant to court order from an otherwise discoverable document, *see United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006) (citing *U.S. v. Napue*, 834 F.2d 1311, 1317 (7th Cir. 1987) (noting that *ex parte* proceedings are generally disfavored, but may become appropriate where an adversarial proceeding would defeat the purpose of the *ex parte* communication under Fed.R.Crim.P.16(d)). Doc. 168 at 2.

## II.    Whether the *Ex Parte* Submission Violates Due Process and Requires Recusal

Defendant concedes that the Government's submission does not automatically constitute a violation of due process.  *See generally Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368 (Fed. Cir. 1999) ("[N]ot every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee. . .")[5]  It would be disingenuous for Defendant to do so.  Based on the Court's experience, criminal defense attorneys who represent indigent defendants pursuant to the Criminal Justice Act (18 U.S.C. 3006A) far exceed the Government in availing themselves of the *ex parte* process, and this case is no exception.  *See, e.g.,* Docs. 34, 35, 85 & 111 (defense counsel's *ex parte* submissions to the Court).  Constitutional concerns arise only when the court receives additional material information that "may undermine the objectivity required to protect the fairness of the process" that constitutional rights are infringed.  *Id*. at 1377.

The Court finds no basis for defense counsel's rather dramatic characterization of the Government's submission as "secret communications between the Government and the Court"

---

[5]   S*ee also, Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 865 (10th Cir. 2005) (citing *Simer v. Rios*, 661 F.2d 655, 679 (7th Cir. 1981))("not all ex parte proceedings violate due process or even raise a serious constitutional issue").

(Doc. 190 at 6) and no basis to suggest that this Court's objectivity has been compromised. The closest Defendant gets to a presentation of the pertinent "facts" in this case which militate recusal is on page 9 of the motion:

> . . . the Court had ex parte communications with the Government about a government witness and the potential scope of his cross-examination. The communications were not in camera, because Mr. Carroll never knew of their existence and was only told about them weeks after the communications had occurred.

Doc. 190 at 9.  Defendant now possesses the potential *Giglio information* pertaining to the Government witness which forms the purported basis for recusal. However, a reasonable person could not consider all the relevant facts in this case and find that the additional information is sufficiently "material" to undermine this Court's objectivity, nor does Defendant offer any connection between the Court's treatment of the potential *Giglio* information and the need for recusal of the undersigned. The recusal statute "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Nichols*, 71 F.3d at 351.  Thus, the Court finds that there was no communication between the Government and the Court, and/or information received by the Court through the *ex parte* submission which could reasonably bring into question this Court's objectivity.

Nor does the Court find that this matter has caused Defendant any prejudice. The relevant facts are undisputed and are a matter of record.  The Court's summary rejection of the Government's *ex parte* request can hardly be said to rise to the level of a "communication" between the Government and the Court.  The fact that the Court refused to begin to consider what the Court described as an "*ex parte* advisory opinion" runs counter to Defendant's argument that the undersigned's impartiality should be examined.  On the day of trial, when the

Court first learned of the Government's late disclosure of the materials which had been the subject of the *ex parte* request, the Court took the matter up immediately and granted defense counsel's request to continue the trial so that counsel could have additional time to consider the recently disclosed information and file the instant motion. Thus, although it was unnecessary and perhaps inappropriate for the Government to have made an *ex parte* request under these circumstances, the Government's submission did not violate Defendant's Fifth Amendment right to due process, particularly in light of the Court's subsequent handling of the matter.

Based on these findings, recusal under §455(a) is not warranted.

## III.   Request for Evidentiary Hearing is Denied

Defendant requests an evidentiary hearing so that the Court can consider the Government's assertion that *ex parte* contacts with a Court is a routine practice, and in what specific cases the practice has occurred. Defendant also suggests that an evidentiary hearing will contest the Government's assertion that *ex parte* communications with the Court is a practice "invited by the Federal Rules of Criminal Procedure." Doc. 192 at 2.

The Court denies the request. A hearing is not required to develop the record, as the relevant facts are undisputed, are a matter of record, and have all been carefully reviewed by the Court. While the Government has not convinced the Court that the *ex parte* process was appropriate or necessary in this particular situation, nevertheless the Government has presented case law which supports its position that the process has been allowed in similar situations by some courts. The Government has also pointed to policy provisions which formally approve of the method to obtain rulings by the Court regarding whether potential impeachment information must be disclosed to defense counsel. Finally, an evidentiary hearing is unnecessary to determine whether *ex parte* communications are "invited" by the Federal Rules of Criminal

Procedure.  One need not look further than Rule 16(d)(1).  It is clear that *ex parte* communications are permissible under the federal rules.  *See* note 4, above. What the rules do not speak to is the judgment that should be used before resorting to *ex parte* communications in order to determine whether a less drastic course is available before seeking the Court's intervention on a matter that completely excludes opposing counsel.

## IV.     Notice of Circumstances in Which *Ex Parte* Communication is Appropriate

In the interest of clarifying what seems to be some uncertainty as to when an *ex parte* request is appropriate (and hopefully in the interest of reducing Court time in rejecting such requests), the Court provides the following guidance.  Such requests are certainly appropriate and necessary if the situation involves potential risk of physical or economic harm to a witness' identity or the potential disclosure of classified information; or where there is a statutory basis for *ex parte* communications.  All other uses of the *ex parte* process should be considered carefully before it is used.

*Ex parte* submissions are permitted under Rule 16(d)(1) in the Court's discretion.  In fact, the rule implies that the Court's permission should be sought prior to making such a request ("[T]he court may permit a party to show good cause by a written statement that the court will inspect ex parte.").  The routine use of *ex parte* requests for the Government to obtain the Court's approval prior to disclosing impeachment material is not appropriate, nor is it necessary.

While the Government prosecutor is not required to "deliver his entire file to defense counsel," *see U.S.. v. Bagley,* 473 U.S. 667, 675 (1985), an *ex parte* request is not required in order to avoid doing so.  The Government should file a sealed (not *ex parte*) motion in limine requesting that the Court inspect the relevant material *in camera*, providing a general summary of the material without disclosing sensitive details.  Should the Court grant the motion, the

9

material can be filed *ex parte* for the Court's *in camera* review.[6] This method avoids keeping the opposing party completely in the dark, while at the same time protects sensitive material from premature or unnecessary disclosure.  Had this procedure been followed, trial in this case would have proceeded as scheduled; jurors who were summoned to appear for this trial would not have wasted their time reporting for jury duty; witnesses who were subpoenaed to testify would not have wasted their time reporting to testify; the Victim's and Defendant's family members and friends would not have wasted their time traveling to Albuquerque to observe the trial; and the Court would not be devoting time and resources responding to this recusal motion.  Simply stated, *ex parte* motions should not be used as a substitute for *in camera* review in order to shut out opposing counsel.

## CONCLUSION

In sum, I find and conclude that while the Government's submission of the subject *ex parte* request was inappropriate and unnecessary, it did not violate Defendant's due process rights.

I further find and conclude that the circumstances surrounding the Government's submission of the subject *ex parte* request do not warrant recusal of the undersigned under § 455(a) and controlling Tenth Circuit precedent interpreting § 455, because no reasonable person knowing all the relevant facts would harbor doubts about the Court's impartiality.  The Tenth Circuit has stated that a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require."  *Nichols*, 71 F.3d at 351 (other citations omitted); *see also U.S. v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994).  Thus, in these circumstances, the undersigned is obligated to continue presiding over this case.

---

[6]  The Court acknowledges that the Criminal Justice Act authorizes defense counsel to submit *ex parte* requests for Court authorization.

I further find and conclude that an evidentiary hearing is unnecessary and would be an additional waste of time and resources.

Finally, the Court offers some guidance regarding the proper use of *ex parte* submissions to the Court as described above for future cases.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Recuse William P. Johnson, filed August 6, 2012 (**Doc. 190**) is hereby DENIED for reasons described in the above Memorandum Opinion and Order.

_____

UNITED STATES DISTRICT JUDGE